IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DELAINE ANDREWS,** | : | **Civil No. 1:08-CV-1669** |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **BUREAU OF CODES ADMINISTRATIVE OFFICE,** *et al.*, | : | |
| **Defendants** | : | |

# M E M O R A N D U M

*Pro se* Plaintiff DeLaine Andrews has filed suit under 42 U.S.C. §§ 1981, 1982, and 1983, asserting numerous violations of her constitutional rights. Plaintiff claims that she was treated less favorably than other similarly-situated property owners with respect to a condemnation order regarding her property. Defendants have moved for summary judgment. (Doc. 115.) For the following reasons, Defendants' motion will be granted in part and denied in part.

## I.    Background

### A.  Parties

The following facts are undisputed, except where noted.[1] Plaintiff, an African American, owned the property that is the subject of this suit, located at 342

---

[1] Plaintiff did not submit a statement of fact responding to Defendants' statements of fact, as required under Middle District Local Rule 56.1. Rather, Plaintiff's counterstatement of fact gives an entirely different version of facts and is replete with argumentative and conclusive language. However, given Plaintiff's *pro se* status and the leniency afforded to such plaintiffs, *see Haines v. Kerner*, 404 U.S. 519 (1972), the court will review Plaintiff's counterstatement of facts and any relevant pleadings, depositions, answers to interrogatories, admissions on file, or affidavits to determine if Defendants' statements of fact are disputed. The court will otherwise rely on Defendants' statements of fact (Doc. 116, "SMF") and the accompanying citations to the record. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 330 n.5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record.)

South 25th Street, Harrisburg, Pennsylvania ("the property"). (SMF ¶ 1.) Defendant Bureau of Codes Administration Office is a division of the Department of Building and Housing Development which is a government agency within the City of Harrisburg. (Second Amended Complaint (hereinafter "Compl." ), Doc. 28, at ¶ 6.)[2] Defendant David Patton is an employee of the Bureau of Codes. (SMF ¶ 2.) Plaintiff states the Patton holds the title of Codes Administrator (Compl. ¶ 7), whereas Defendants state that he is the Deputy Director of Codes Enforcement (Doc. 129, Def.'s Answer, ¶ 7). Plaintiff states that Defendant Earl Dieffenderfer is a Codes Enforcement Officer for the City of Harrisburg. (Compl. ¶ 8.) Defendants deny this allegation. (Def.'s Answer, ¶ 8.) Lastly, Plaintiff states that Defendant Arden Emerck is the Assistant Director of Building and Housing Development (Compl. ¶ 9), whereas Defendants claim he is the Assistant Codes Administrator (Def.'s Answer, ¶ 9). Regardless, the court does not find the disparities in these individuals' titles to have any dispositive affect on its ruling.

**B.   Facts**

In March or April, 2006, a fire occurred at Plaintiff's property. (SMF ¶ 11.) Plaintiff believes the fire was caused by a five-gallon can of polyurethane in the house, which she believes was used by children to start the fire. (SMF ¶ 12.) The property sustained damages, which included broken windows in the back and in the living room; damaged doors, one of which had to be boarded up; soot damage throughout the house; damage to the walls in the living room, dining room and

---

[2]   Plaintiff labels Defendant as "Bureau of Codes Administration Office," whereas Defendants' answer admits that the "Bureau of Inspection and Codes Office" is a Bureau within the Department of Building and Housing Development within the City of Harrisburg. (Def.'s Answer, ¶ 6.) Neither party disputes the identity or nature of this Defendant and, thus, for the sake of clarity, the court will refer to this Defendant as the "Bureau of Codes."

kitchen; and damage to walls on the second floor.  (SMF ¶ 13.)  Furthermore, electric service was disconnected as a result of the fire.  (SMF ¶ 14.)  The property did not have gas service for as long as Plaintiff owned it.  (*Id.*)

On September 7, 2006, Defendant Dieffenderfer performed an inspection at the property.  (SMF ¶ 15.)  Dieffenderfer noted the following violations and unsafe conditions:

> Structure open to unauthorized entry, utilities are off, door and window units damaged/missing, structure has fire damage rendering it unsafe, open allowing weather to interior.

(SMF ¶ 16; Doc. 16-2.)

Dieffenderfer's overall evaluation of the building states:

> Structure is vacant, deteriorated due to lack of maintenance and fire, it is a blight to the neighborhood, a fire hazard, a hazard to public health and safety, inspection limited to exterior views.

(*Id.*)  Plaintiff claims that a structural engineer concluded that the property was structurally sound and any damage was only cosmetic damage.  (Doc. 116-1, Andrews Dep., pp. 85, 121-22.)

On September 11, 2006, the City of Harrisburg's Department of Building and Housing Development issued Condemnation Order No. 2006-120 against Plaintiff's property, requiring Plaintiff to procure the appropriate permits to rehabilitate the structure within fifteen days of the order, or face demolition.  (SMF ¶ 18; Doc. 16-2.)  The order also advised Plaintiff of her right to appeal the order within fifteen days and explained that a $100 application fee or proof of indigence must accompany the appeal.  (*Id.*)  The condemnation order was based on Dieffenderfer's inspection on September 7, 2006.  (SMF ¶ 19.)  At the time of the

condemnation order, neither the gas service nor the electric service was turned on at the property and all the windows were knocked out in the back of the property, as were the living room windows in the front of the property.  (SMF ¶¶ 20-22.) Following the fire, children were continuing to vandalize her property.  (SMF ¶ 23.) Plaintiff received a copy of the condemnation order and never appealed the order nor called anyone in the Bureau of Codes to request more time to fix the property. (SMF ¶¶ 25-26.)  Plaintiff claims, however, that she wrote a letter to the Bureau of Codes stating that she wanted to appeal but was unable to do so because of financial reasons.  (Doc. 116-1, Andrews Dep., pp. 75-77, 106.)  Defendants Emerick and Patton advised Plaintiff that her letter was insufficient to show her indigence and Plaintiff took no further action to pursue an appeal.  (*Id.* at pp. 76, 106.)

Defendant Dieffenderfer went back to the property on October 19, 2006 as a result of complaints the Bureau of Codes received regarding the property.  (SMF ¶ 28.)  Seeing no evidence that any work was taking place to rehabilitate the property, a citation was issued on October 19, 2006, with a hearing date set for May 29, 2007.  (SMF ¶ 29.)  Dieffenderfer received another complaint about the property, resulting in another citation issued on November 9, 2006.  (SMF ¶ 30.)  On February 14, 2007, Dieffenderfer returned to the property and, finding no evidence of rehabilitation, issued a third citation.  (SMF ¶ 32.)  A fourth citation was issued on February 26, 2007, after Dieffenderfer once again found the property in the same condition.  (SMF ¶ 33.)

A hearing on these citations before the District Justice was held on May 29, 2007.  (SMF ¶ 34.)  Plaintiff did not attend the hearing and was found guilty of the citations.  (SMF ¶ 35.)  Plaintiff was granted a *nunc pro tunc* summary appeal,

and a hearing on that appeal was scheduled for April 29, 2008, in the Court of Common Pleas of Dauphin County.  (SMF ¶ 36; Doc. 116-3.)

Prior to the April 2008 hearing, Plaintiff met with Dieffenderfer at the property on November 13, 2007.  (SMF ¶ 38.)  At this meeting, Dieffenderfer observed fire damage and saw minimal evidence of work having been done.  (SMF ¶ 39.)  Plaintiff disputes that minimal work was completed, and claims that she installed new windows, began replacing plaster, and substantially completed the electrical work and the electricity was functioning.  (Doc. 116-1, Andrews Dep., pp. 129-130.)  Dieffenderfer gave Plaintiff a Narrative Inspection Form with a list of items that needed to be corrected within thirty days to correct the violations that existed.  (SMF ¶ 40.)  The list included: sealing openings in the party wall in the kitchen and living room, replacing missing or damaged windows, completing repairs to the electrical system and having it inspected by a third party, and completely rehabilitating the kitchen and activating all utilities so the heating system could be checked.  (SMF ¶ 41; Doc. 116-4.)  Plaintiff also claims that Defendants Dieffenderfer and Emerick added additional housing compliance requirements to the original condemnation order including the requirement to have "heat turned on," which is not listed as a requirement for vacant houses in any city ordinance or maintenance code.  (Doc. 123 ¶ 21.)

On April 24, 2008, three days prior to the scheduled hearing, Dieffenderfer visited the property and found that Plaintiff had largely failed to complete the list of items on the Narrative Inspection Form, noting that the back windows were still boarded, and broken windows and fire debris remained on the

side of the property.  (SMF ¶¶ 42-43.)  Defendant also took a photograph of the property's electrical meter base, with no meter in it.  (SMF ¶ 44.)

A hearing in the Dauphin County Court of Common Pleas was held on April 29, 2008.  Plaintiff was again found guilty of the three citations.  (SMF ¶ 46; Doc. 116-3, Transcript of proceeding.)  The court stated "there is just no question at all about [Plaintiff's] failure to act diligently or . . . reasonably."  (Doc. 116-3 at 94 of 100.)  Plaintiff was given an option to avoid jail time by either selling the property, or rehabilitating the property such that an occupancy permit could be issued within sixty days of the hearing.  (SMF ¶ 48.)  Ultimately, Plaintiff decided to sell the property for less than $10,000, despite a market value that she estimated at $79,000.  (SMF ¶ 49; Doc. 116-1, Andrews Dep., p. 152.)  The property was sold to Professional Grade, Inc. on June 30, 2008.  (SMF ¶50.)  According to a Delaware Corporation Report, DeLaine Andrews of 1908 Oak Lane Road, Wilmington, Delaware, is listed as the registered agent of Professional Grade, Inc.  (SMF ¶ 51; Doc. 116-6.)  As of March, 2010, the front and side windows of the property were still boarded.  (SMF ¶ 52; Doc. 116-7.)

### C.   <u>Procedural History</u>

Plaintiff filed a complaint on September 8, 2008.  (Doc. 1.) Defendants filed a motion to dismiss the complaint on December 22, 2008.  (Doc. 10.)  By order dated February 9, 2009, Plaintiff was granted leave to file an amended complaint  (Doc. 19) and her amended complaint was filed that same day (Doc. 20). Defendants filed their answer on March 5, 2009.  (Doc. 24.)  Plaintiff then filed a second amended complaint on August 14, 2009, having been granted leave by the court to do so.  (Doc. 28.)  The complaint alleges that Defendants' actions amount to

a criminal prosecution that was more harsh than other similarly-situated landowners as a result of her minority status and in retaliation for her filing prior civil rights complaints with City of Harrisburg Human Relations Commission.  (Compl. ¶ 21.) The complaint also alleges that Defendant Dieffenderfer and another code enforcement officer discussed measures to "get her back" saying things such as "don't worry, you know I don't like those people."  (*Id.* ¶ 23.)  It further alleges that Defendant Dieffenderfer said, within earshot of both Plaintiff and Plaintiff's husband that "he would never allow 'you niggers' to win" and that Dieffenderfer used similar racial epithets against other minority owners.  (*Id.* ¶¶ 68, 69.)  Read generously, the complaint brings the following claims: Count one – First Amendment retaliation and access to courts claims; Count three[3] – Fourth Amendment unreasonable seizure claim and violation of the Fair Housing Act, 42 U.S.C. § 1982; Count four – Fifth Amendment violation involving a government deprivation without just compensation; Count five – Fourteenth Amendment procedural and substantive due process violations; Count six – Fourteenth Amendment equal protection violations; Count seven – violations of 42 U.S.C. §1981 (and another Fourteenth Amendment Equal Protection Claim); and Count eight – Abuse of process and wrongful use of legal proceedings.

Defendants answered the complaint on August 24, 2009.  (Doc. 29.) Defendants never re-filed a motion to dismiss in response to the amended complaints but continue to maintain that all their actions were reasonable under the circumstances and no constitutional violations occurred.  Following numerous extensions and an unsuccessful settlement conference, trial was scheduled for June 27, 2011.  However,

---

[3] There is no count two in the complaint.

following a pretrial conference and a review of the parties' pretrial memoranda, the

court issued an order continuing the trial, noting that:

> [I]t is evident that trial in this matter in the present state is not yet appropriate as there is confusion regarding what claims are being properly raised. Presently, the claims at issue appear to be duplicitous, imprecise, and possibly insufficient. The court notes that a motion to dismiss was previously filed by Defendants regarding Plaintiff's original complaint. While that motion was pending, Plaintiff was granted leave to file an amended complaint, thereby mooting the motion to dismiss. A second amended complaint was later filed. No motion to dismiss was filed thereafter regarding the second amended complaint. It is clear this case would benefit from a clarification of the claims at issue.

(Doc. 114.)

Defendants thereafter filed a motion for summary judgment on July 15,

2011 (Doc. 115) accompanied by a statement of material facts (Doc. 116) and a brief

in support (Doc. 117).  Defendants move for summary judgment as to: (1) all claims

against the Bureau of Codes, (2) Plaintiff's procedural due process claim,[4] (3)

Plaintiff's substantive due process claim, (4) Plaintiff's equal protection claim, and

(5) the individual Defendants on the basis of qualified immunity.[5]  Following an

extension, Plaintiff filed a brief in opposition on September 14, 2011 (Doc. 122) and

counterstatement of material facts (Doc. 123).  No reply brief was filed.  On October

20, 2011, the court issued an order staying the case in light of the Suggestion of

---

[4]    In her Brief in Opposition, Plaintiff withdraws her procedural due process claim. (Doc. 122 at 19 of 29.)  Accordingly, Plaintiff's procedural due process claim will be dismissed.

[5]    Although Defendants do ask for dismissal of all claims, either on the basis of qualified immunity, or pursuant to the Supreme Court's decision in *Heck v. Humphry*, 512 U.S. 477 (1994), both arguments of which are rejected below, Defendants' motion only moves for summary judgment with specificity on the above-mentioned claims.  As such, the motion is, in actuality, a motion for *partial* summary judgment, and those claims not addressed with specificity will survive Defendants' motion.

Bankruptcy filed by counsel for Defendant City of Harrisburg.  (Doc. 125.)  That stay was lifted by court order dated December 7, 2011.  (Doc. 126.)  Thus, the motion is now ripe for disposition.

**II.**          **Standard**

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment.  Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law.  Fed R. Civ. P. 56(a)[6]; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323. A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*  When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same.  *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005), *cert denied*, 546 U.S. 1094 (2006).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324

---

[6] *See* Fed. R. Civ. P. 56, Advisory Comm. Note (2010 Amendments) (The frequently cited standard for summary judgment is now set forth in Rule 56(a) rather than Rule 56(c)(2010). The Advisory Committee explains that despite the language change, "[t]he standard for granting summary judgment remains unchanged" and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases.").

(1986). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n,* 601 F.3d 212, 216 (3d Cir. 2010).   The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted).   Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23.   "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.**       **Discussion**

  **A.  Section 1983**

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

in an action at law, suit in equity, or other proper
proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a
method for vindicating federal rights elsewhere conferred by those parts of the United
States Constitution and federal statutes that it describes."  *City of Monterey v. Del
Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted).  To prevail
in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right
secured by the Constitution and the laws of the United States and (2) that the alleged
deprivation was committed by a person acting under color of state law.  *Nicini v.
Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d
Cir. 1993).  "The first step in evaluating a section 1983 claim is to 'identify the exact
contours of the underlying right said to have been violated' and to determine
'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"
*Nicini*, 212 F.3d at 806 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5
(1998)).  Here, Plaintiff brings claims pursuant to the First, Fourth, Fifth and
Fourteenth Amendments.  The court will address only those claims moved for
summary judgment by Defendants.

### B.   Claims against Bureau of Codes

As an initial matter, the court rejects Defendants' arguments that
Bureau of Codes must be dismissed because it is not a "person" within the meaning
of civil rights jurisprudence.  The court acknowledges that departments or sub-units
of a municipal government cannot be sued in conjunction with municipalities because
those departments are merely administrative arms of the local municipality, not a
separate judicial entity.  *See DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa.

2001) (granting summary judgment to police department "because the department is merely an administrative arm of the local municipality . . . ."); *Open Inns, LTD, v. Chester Cnty.*, 24 F. Supp. 2d 410, 417, 425 (E.D. Pa. 1998) (dismissing claims against Chester County Sheriff's Department and substituting Chester County as the proper defendant.); *Streater v. City of Camden Fire Dep't*, 567 F. Supp. 2d 667, 674 n.5 (D.N.J. 2008) (fire department cannot be sued in conjunction with City).  Here, Plaintiff sued the Bureau of Codes, which is an administrative arm of the City of Harrisburg.  (SMF ¶ 2.)  Although the Bureau of Codes cannot be a party to this action, the court will treat Plaintiff's complaint as though she has sued the City of Harrisburg and will analyze her claims accordingly.

For municipal liability to attach to the City of Harrisburg, Plaintiff must allege that the City itself caused a constitutional violation.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).   *Respondeat superior* is not a viable theory of municipal liability.  *Id.* at 663.  Instead, a plaintiff must plead and prove that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury." *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404 (1997) (emphasis in original); *accord Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  To do so, a plaintiff must allege that a municipal custom or policy was the proximate cause of the constitutional injury sustained.  *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990).  To establish that a municipality has a custom that violates §1983, a plaintiff must identify a custom or practice "so permanent and well-settled as to virtually constitute law."  *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Andrews*, 895 F.2d at 1480).  A policy is established if a plaintiff can

show that a "decisionmaker possessing final authority to establish municipal policy with respect to the action 'issues an official proclamation, policy or edict.'" *Id.*

Defendants argue that Plaintiff offers no evidence that the City of Harrisburg (or Bureau of Codes) has established a custom or policy that violates Plaintiff's constitutional rights.  Plaintiff disagrees in this regard, but offers only that "Defendants [Art Emerick, David Patton, and Earl Dieffenderfer] have established a long standing practice and policy of discrimination against minorities and complaining owners."  (Doc. 122 at 13 of 19.)  This argument, however, only addresses the actions of the individual defendants.  Plaintiff does not argue, or cite to any evidence that the City of Harrisburg deliberately, through custom or policy, violated Plaintiff's constitutional rights.  In fact, the court's review of the record reveals that it is completely devoid of any such evidence.  Accordingly, the court will grant summary judgment as to the City of Harrisburg on all counts.

### C.   Claims against Defendant David Patton

"'[D]efendant[s] in a civil rights action must have personal involvement' to be liable."  *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Here, Plaintiff's complaint identifies Defendant Patton as an employee of the Bureau of Codes, but never makes any substantive allegations against him.  (*See* Compl. ¶ 7.) Furthermore, Plaintiff's counterstatement of material facts (Doc. 123) also fails to adduce any facts or allegations that would indicate that Defendant Patton had any personal involvement in any activity that might amount to a constitutional violation. In fact, the only substantive allegation that the court can identify anywhere on the record regarding Defendant Patton is that he, along with Defendant Emerick, refused

to waive the appeal fee based on Plaintiff's insufficient showing of indigence.  In short, Plaintiff has not set forth any evidence regarding Defendant Patton that could establish any constitutional violation.  Accordingly, summary judgment will be granted as to Defendant David Patton on all counts.

### D. *Heck* **Argument**

Defendants next argue that, pursuant to the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), Plaintiff cannot proceed with her §1983 claim unless the underlying criminal case terminated in her favor.  (Doc. 117 at 15 of 23.)  Defendants argue that because Plaintiff was convicted of the underlying charges in the Dauphin County Court of Common Pleas, she cannot proceed on any claims for a violation of her constitutional rights in connection with the filing or prosecution of these citations.  (*Id.*)  This argument fails.

In *Heck*, the Supreme Court made it clear that an action under §1983 could not be maintained on the basis of events leading to a conviction which has not been reversed or impaired by other official proceedings if a judgment in favor of the plaintiff in the civil case would imply that the conviction was invalid.  512 U.S. at 485-86.  The court reasoned that, in order to prevail in the §1983 action, a plaintiff would have to negate an element of the offense of which he has been convicted.  *Id.* at 487 n.6.

Having reviewed the transcript of the summary appeal in the Dauphin County Court of Common Pleas, the court does not see how a favorable judgment in the present action would call into question Plaintiff's underlying conviction.  The issue resolved by the Court of Common Pleas was Plaintiff's non-compliance with the citations.  The court found as follows:

14

> We find the defendant guilty at all counts.  To me there is
> just no question at all about her failure to act diligently or,
> as the International Property Maintenance Code says,
> reasonably.

(Doc. 116-3 at 92-93.)  This case, however, is different in that Plaintiff is not

attempting to invalidate her convictions or prove her compliance with the

condemnation order or citations, but rather is alleging that she was treated more

harshly than other similarly-situated property owners.  The underlying action did not

address these allegations, and instead only analyzed Plaintiff's compliance with the

terms of the condemnation order or citations.  Indeed, the court could find that

Plaintiff did suffer disparate treatment without affecting or infringing on the

Common Pleas Court's finding of her noncompliance with the terms of those

particular citations.  *See Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997)

(declining to apply *Heck* on similar grounds.)  Consequently, *Heck v. Humphrey* does

not bar this case.

### E.   Equal Protection

Next, Plaintiff claims that Defendants treated her adversely and

differently than other similarly-situated, non-minority property owners and other

owners who have not filed discrimination complaints against the Bureau of Codes

("non-complaining" property owners), all in violation of the Equal Protection Clause

of the Fourteenth Amendment.  The Equal Protection clause provides that no state

shall "'deny to any person within its jurisdiction the equal protection of its laws,'

which is essentially a direction that all persons similarly situated should be treated

alike."  *City of Cleburn v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Plaintiff's equal protection claim is based on a selective enforcement

theory as well a "class of one" theory.  Selective enforcement is a form of

discriminatory law enforcement that has been held to violate the Equal Protection Clause. *Davis v. Malitzki*, 2011 U.S. App. LEXIS 23029, *16 (3d Cir. Nov. 17, 2011).  Under a selective enforcement claim, Plaintiff must prove (1) that persons similarly situated were not prosecuted and (2) that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor. *Id.*  Under a "class of one" theory, Plaintiff must establish that (1) Defendant treated her differently from others similarly situated, (2) Defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Karnchak v. Swatara Twp.*, 540 F. Supp. 2d 540, 550 (M.D. Pa. 2008).[7]

Defendants move for summary judgment on the grounds that "Plaintiff has no specific evidence that she received unfavorable treatment due to her race or due to the fact that she filed a previous complaint against [a non-defendant BOC employee]."  Defendants also argue that Plaintiff has no evidence that the race of any other property owners was known by any of the moving Defendants.  The court disagrees with Defendants and finds that there is a genuine issue of material fact regarding whether Plaintiff received unfavorable treatment due to her race or in retaliation for her previously filed complaints.

Plaintiff's burden at summary judgment in a § 1983 case is to provide some "affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton,* 523 U.S.

---

[7]    As this court stated in *Hookey v. Dalton*, 2010 U.S. Dist. LEXIS 112144, *12 (M.D. Pa. Oct. 21, 2010), the primary difference between the two theories is that the "traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class such as gender or race [while] [i]n contrast, under the class-of-one theory, a plaintiff may have an equal protection claim even absent protected-class status if he or she alleges irrational and intentional differential treatment when compared with similarly situated individuals." (citations omitted).

574, 600 (1998).  To establish her equal protection claim, Plaintiff is required to produce evidence – more than a scintilla, but less than a preponderance – that a discriminatory purpose was a motivating factor in Defendants' decision to take action against Plaintiff.  *See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 2006 U.S. Dist. LEXIS 59610, *69  (M.D. Pa. Aug. 23, 2006).

The gist of Plaintiff's equal protection claim is that she was singled out and treated by Defendants in a harsher manner than other non-complaining, non-minority, but otherwise similarly-situated land owners, and that the Defendants were motivated by racial bias.  Here, the court finds Plaintiff has adduced sufficient evidence to survive Defendants' motion.  For example, Plaintiff specifically identifies several nearby properties[8] owned by non-complaining or non-minority individuals that were condemned or in a condemnable state for ten or more years without prosecution from the Bureau of Codes until after Plaintiff filed her complaint.  (Doc. 122, p. 18 of 29; Doc. 123, ¶¶ 2, 12).  Plaintiff attaches to her counterstatement of fact pictures and condemnation orders associated with these properties.  (Doc. 123, Ex. I, J, K, L.)  Plaintiff also identifies by name eight other minority property owners[9]

---

[8]  These properties and owners include: John Schachte and William Rothman of 912 N. 6th Street; Timonty Moharis, 1000 N. 6th St. (property owned by Annette Antoun); 1006 N. 6th St. (property owned by Annette Antoun); properties at 1935 Market Street (owned by Agnes Wallace) and 1701 Elm Street (owned by Jennifer Julian).  (Doc. 122 at 18 of 29; Doc. 123 ¶¶ 3, 12.)  Plaintiff argues specifically that Defendant Emerick treated Schachte and Rothman with greater leniency than other minority property owners by issuing construction permits for fire restoration repairs (Doc. 123, Exs. E and E2) without condemning the property and requiring repairs be made within fifteen days.  Plaintiff contends that Defendant Emerck recently condemned the property at 1000 N. 6th St. after she filed her complaint "for the purpose of appearance to the Jury that Defendants administer their Property Maintenance Code in a fair and equitable manner."  (Doc. 123, ¶ 16.)

[9]  Plaintiff identifies these individuals as Andean Smith, Phillip Brown, Lamar Palmer, Michelle Morrison, Celestine Henderson, Torian O. Burney, Andrea Willis, and Gary Willis Burney. (Doc. 123 ¶¶ 3,6.)

who all sold or lost their property for "failure to comply with Property Maintenance Code 108.1.1" and were not given the same pre-condemnation notices and allowances for time to comply as the other non-minority, non-complaining owners. Plaintiff states that several of these owners are available and prepared to testify at trial. (Doc. 123 at ¶¶ 3, 6.)  Plaintiff claims, and Defendants do not specifically refute, that all these property owners are similarly situated.  Regardless, "whether persons are similarly situated is a factual issue that should be submitted to the jury." *Desi's Pizza*, 2006 U.S. Dist. LEXIS 59610, at *75 (citing *Pagliuco v. City of Bridgeport*, 2005 U.S. Dist. LEXIS 33738 (D. Conn. Dec. 13, 2005)).  In short, Plaintiff has offered more than sheer speculation that she and others were treated differently and, by specifically identifying allegedly similarly-situated individuals and comparing her, and others' treatment by Defendants, Plaintiff has met her burden at this stage with regard to this claim.  *See, e.g., Media Alliance v. Mirch*, 2011 U.S. Dist. LEXIS 84950, *24 (N.D.N.Y. Aug. 2, 2011) ("At the summary judgment stage, a plaintiff must present evidence comparing [herself] to individuals that are similarly situated in all material respects" and dismissing for failing to identify individuals by name or any other means.)

The court is also satisfied that Plaintiff has made a sufficient showing that a discriminatory purpose was a motivating factor for Defendants.  Plaintiff put forth evidence, which is not specifically refuted by Defendants, suggesting that at least one of the named Defendants made racially disparaging remarks regarding African Americans.  Further, the alleged disparate treatment of identified minority property owners from identified non-minority property owners also suggests a possible racial motivation.

Defendants argue that the undisputed facts show nothing more than proper treatment of Plaintiff's property given the condition it was in. (Doc. 117, at 20 of 23.) However, "it is well-established . . . that selective prosecution may constitute illegal discrimination even if the prosecution was otherwise warranted." *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 425 (3d Cir. 2003) (citing *Wayte v. United States,* 470 U.S. 598, 608 (1985)). Thus, dismissal is not warranted on this ground even if Defendants had both a mixed legitimate and non-legitimate motive.

In short, the court finds genuine issues of material fact remain regarding Defendants' motives and further finds that the facts, viewed most favorably for Plaintiff, could lead a reasonable jury to conclude that Defendants acted with a racially discriminatory purpose in treating Plaintiff more harshly than other similarly-situated individuals. Accordingly, Defendants' motion for summary judgment is denied with respect of Plaintiff's equal protection claim.

**F.      Substantive Due Process**

The Fourteenth Amendment provides, in part, that "no State [shall] deprive any person of life, liberty, or property without due process of law . . . ." U.S. Const. Amend. XIV, § 1. "To prevail on a substantive due process claim under § 1983, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Para v. City of Scranton*, 2008 U.S. Dist. LEXIS 53854, *31 (M.D. Pa. July 10, 2008) (quoting *Woodwind Estates Ltd. v. W.J. Gretkowsi*, 205 F.3d 118 (3d Cir. 2000)). "A substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a

'particular quality of property interest.'" *Id.*  On this point, the court is satisfied that Plaintiff's ownership in and use and enjoyment of property are interests protected by substantive due process.  *See Wrench Transp. Sys. v. Bradley,* 340 F. App'x 812, 816 (3d Cir. 2009) (citing *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600-01 (3d. Cir. 1995), *abrogated on other grounds by United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003)); *see also Hammond v. City of Wilkes-Barre*, 2011 U.S. Dist. LEXIS 34312, *16 (M.D. Pa. Mar. 30, 2011); *Grimm and Grimm Bros. Realty Co. v. Sweeney*, 249 F. Supp. 2d 571, 608 (E.D. Pa. 2003).

Defendants argue that the deprivation of Plaintiff's property interest by the state actors must "shock the conscience."  (Doc. 117, at 18 of 23 (citing *United Artists Theater Circuit, Inc. v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003))), and that "Plaintiff cannot point to any 'conscience-shocking' conduct on the part of any of the Moving Defendants associated with this alleged deprivation."  (*Id.*) The court agrees that, in land-use cases, the Third Circuit applies the "shocks the conscience" standard.  *See United Artists*, 316 F.3d at 400-01; *Para*, 2008 U.S. Dist. LEXIS 53854 at *31 (applying the "shocks the conscience" standard to Plaintiff's substantive due process claim where his real property was condemned and demolished following a fire).   The "shocks the conscience" standard replaced the less stringent "improper motive" standard enunciated in *Bello v. Walker*, 840 F.2d 1124 (3d Cir. 1988).  Plaintiff's burden in satisfying this standard is considerable: a substantive due process claim "will survive summary judgment only if plaintiff can present evidence from which a jury could conclude that the locality's decision was not rationally related to a legitimate land use goal."  *Corneal v. Jackson Township*, 313 F. Supp. 2d 457, 469 (M.D. Pa. 2003).  In *Corneal*, this court found that the

defendants acted with "mixed motives," one related to a legitimate land regulation purpose and the other related to an illegitimate purpose rooted in "personal animus." *Id.* at 468. The court concluded that such a showing does not satisfy the "shocks the conscience" standard because the defendant's actions were based at least partly on legitimate land use concerns. *Id.* at 465, 470. Indeed, courts have generally disfavored substantive due process as a theory of constitutional redress, finding that civil liability for a violation of substantive due process arises from "only the most egregious official conduct . . . ." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). As the First Circuit stated:

> Substantive due process, as a theory of constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach. To apply it to claims like the present would be to insinuate the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals. Clearly, it is no simple matter to decide what abuses to regard as abuses of "substantive" due process. Every litigant is likely to regard his own case as involving such an injustice. Thus, we have consistently held that the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes. In the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief. We have left the door slightly ajar for federal relief in truly horrendous situations. But, this circuit's precedent makes clear that the threshold for establishing the requisite "abuse of government power" is a high one indeed.

*Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992).

The court nevertheless finds that Plaintiff's substantive due process claim narrowly survives Defendants' motion for summary judgment. Although the court finds that Defendants' actions were based at least partly on legitimate land use

concerns,[10] the court also finds that the nature of the alleged conduct satisfies the "shocks the conscience" standard because Plaintiff has adduced facts that, when viewed in the light most favorable toward Plaintiff, suggest that Defendants exhibited disparate treatment toward minority home owners as compared to similarly-situated non-minority property owners.  As stated above, Plaintiff identifies several other property owners, by name and address, that she claims received pre-condemnation notices and allowances for additional time to comply with condemnation orders, which she herself did not receive.  Additionally, she identifies eight other minority property owners who also allegedly received disparate treatment.  She claims that she heard one of the Defendants state they will "get her back" and "I don't like those people" and mutter other racial epithets.  The Third Circuit has found that conduct that shocks the conscience includes corruption or self-dealing, interfering with a constitutionally protected activity, or, most relevant here, bias against an ethnic group.  *Pettus v. City of Phila.*, 2011 U.S. Dist. LEXIS 87525, *24 (E.D. Pa. Aug. 5, 2011) (citing *Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2008) and *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004)); *see also MARJAC, LLC v. Trenk*, 380 F. App'x 142, 147 (3d Cir. 2010).  Accordingly, the court rejects Defendants' arguments that none of Plaintiff's allegations rise to "conscience-shocking" levels. Indeed, Plaintiff's  substantive due process claim is rooted in allegations that Defendants' actions demonstrated bias toward an ethnic group.  While this situation may be similar to *Corneal* in the sense that the record suggests that mixed motives may have been driving Defendants' actions, this case is distinguishable because the

---

[10] The record shows that Plaintiff's property was severely damaged by the fire rendering it a health and safety hazard .

illegitimate motivations here are not merely allegations of "personal animus," but rather allegations of disparate treatment based on ethnic bias. It is clear that genuine issues of fact remain regarding Defendants' motives that cannot be resolved at this stage of litigation. Viewing these facts in the light most favorable to Plaintiff, the court is satisfied that Plaintiff has made a sufficient showing such that a reasonable fact finder could find that Defendants' actions constitute an arbitrary exercise of power that deprived her of the enjoyment and use of her property. Summary judgment will therefore be denied on this count.[11]

### G.     Fourth Amendment Unreasonable Seizure

Plaintiff states that she "was forced to sell the property with[in] 60 days at a submarket value because she did not feel that the Code Enforcement Officer would be fair and impartial in his inspection of the property and would further retaliate against her repeatedly by adding on additional items for compliance . . . ." (Compl. ¶ 58.) Plaintiff further states that, as a result of Defendants' "unreasonable demands and the legal impositions that the property be completed in 'fifteen days,'" she was forced to sell her property. (*Id.* ¶ 72.) Plaintiff argues that the sale of her property constitutes a "constructive seizure," in violation of the Fourth Amendment. (*Id.* ¶ 100.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

---

[11] Courts in this district have dismissed substantive due process claims where the plaintiff also states an unlawful seizure in violation of a plaintiff's Fourth Amendment rights, because the substantive due process claim can be fully remedied under the Fourth Amendment. *See Shrey v. Kontz*, 2011 U.S. Dist. LEXIS 119434, *9 (M.D. Pa. Oct. 17, 2011). However, because the court will grant summary judgment for Defendants in regard to the unreasonable seizure claim (*see* Part E, *infra*), the substantive due process claim may proceed.

seizures, shall not be violated."  U.S. Const. Amend. IV.  A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.  *See Banks v. Gallagher*, 2010 U.S. Dist. LEXIS 141544, *44 (M.D. Pa. Dec. 13, 2010) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

The Supreme Court has noted that "[f]rom the time of the founding to the present, the word 'seizure' has meant a 'taking possession.'" *California v. Hodari D.*, 499 U.S. 621, 624 (1991).  Although caselaw on this topic has been somewhat mixed, courts generally interpret a possessory interest in property to mean taking *physical* possession.  *See, e.g., Arizona v. Hicks*, 480 U.S. 321, 324 (1987); *Hale v. Hinkle*, 201 U.S. 43, 76 (1906)("[A] seizure contemplates a forcible dispossession of the owner."); *see also Finley v. City of Phila.*, 2011 U.S. Dist. LEXIS 99057, *8 (E.D. Pa. Aug. 31, 2011).  Here, Plaintiff never claims that her property was physically seized by Defendants or that Defendants took the property pursuant to any condemnation order.   Rather, it is undisputed that Plaintiff sold[12] her property based on her personal belief that Defendants would be unfair during inspections.  The court finds that Plaintiff's sale of her property does not constitute a "seizure" as contemplated under the Fourth Amendment.  Defendants never possessed, forcibly or otherwise, Plaintiff's property.  Accordingly, the court will grant summary judgment in favor of Defendants on this claim.

## H.   Fifth Amendment Government Deprivation

---

[12]    Plaintiff's claim that she "sold" her property appears dubious.  Tax documents related to the property indicate that the property was sold to "Professional Grade."  (Doc. 116-5.)  A Delaware Corporation Report indicates that DeLaine Andrews is the Registered Agent for Professional Grade. (Doc. 116-6.)

Likewise, Plaintiff's Fifth Amendment claim fails.  The Fifth Amendment proscribes the taking of property without just compensation.  U.S. Const. Amend. V.  It is well-recognized that this prohibition applies to state and local governments under the Fourteenth Amendment.  *See Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001)(citing *Chicago, Burlington & Quincy R.R. Co. v. City of Chi.*, 166 U.S. 226, 239 (1897)).  However, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied compensation."  *Id.* (*citing Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson*, 473 U.S. 172, 195 (1985)).

Here, because Plaintiff voluntarily sold her property based on her belief that Code Enforcement Officers would treat her unfairly, there does not appear to be a "taking" within the meaning of the Fifth Amendment.  At most, Plaintiff's claim of a "constructive seizure" may be interpreted as a "regulatory taking" because the enforcement of housing codes diminished the value of her house.  However, a regulatory taking occurs only when the government's action deprives a landowner of *all* economically viable uses of his or her property.  *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992); *Cowell*, 263 F.3d at 291.  Plaintiff sold her property for some amount less than $10,000, indicating that her property did not loose all value.  (SMF ¶ 49; Doc. 116-1, Andrews Dep., p. 152.)  Moreover, Plaintiff does not even allege, or set forth any evidence whatsoever that she attempted to use Pennsylvania's procedures to request just compensation but was denied.[13]

---

[13]   Under Pennsylvania law, a landowner may file a petition requesting the appointment of viewers to declare a taking and ascertain just compensation.  *See* 26 Pa. C.S. § 502.  If the landowner is

(continued...)

Accordingly, this claim must fail and summary judgment will be granted for Defendants.

## I.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity because nothing about the condemnation order or the citations to Plaintiff's property violated a constitutional right.  Defendants reason that because the Dauphin Count Court of Common Pleas has already found the terms of the condemnation order and citations to be to reasonable, no constitutional violations could have occurred.  The court disagrees.

When, as is the case here, a government official's actions give rise to a § 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as a shield from suit.  *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  The primary purpose of affording public officials the privilege of qualified immunity, thus insulating them from suit, is to protect them "from undue interference with their duties and from potentially disabling threats of liability."  *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).  The privilege of qualified immunity, however, can be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818.  The Supreme Court, in *Saucier v. Katz*, explained the analytical process for determining when the privilege of qualified immunity has been overcome:

---

[13](...continued)
successful, then s/he may also be awarded reasonable appraisal, attorney, engineering, and other costs incurred.  *See* 26 Pa. C.S. § 709.

> A court required to rule upon the qualified immunity issue
> must consider, then, this threshold question: Taken in the
> light most favorable to the party asserting the injury, do
> the facts alleged show the officer's conduct violated a
> constitutional right?  This must be the initial inquiry. . . .
> If no constitutional right would have been violated were
> the allegations established, there is no necessity for further
> inquiries concerning qualified immunity.  On the other
> hand, if a violation could be made out on a favorable view
> of the parties' submissions, the next, sequential step is to
> ask whether the right was clearly established.

533 U.S. 194, 201 (2001) (citation omitted).  Although the Supreme Court announced

that *Saucier*'s two-step protocol is not mandatory, courts have the discretion to

decide whether that procedure is worthwhile in particular cases.  *Pearson v.*

*Callahan,* 555 U.S. 223, 240 (2009).

When immunity is raised at the summary judgment stage, the court's

analysis of the merits of the claims for purposes of summary judgment essentially

merges with its analysis of the existence of a deprivation of federal rights for

purposes of immunity.  *See Gruenke v. Seip*, 225 F.3d 290, 299-300 (3d Cir. 2000);

*Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000); *see also*

*Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir.1996) ("[C]rucial to the

resolution of [the] assertion of qualified immunity is a careful examination of the

record . . . to establish . . . a detailed factual description of the actions of each

individual defendant (viewed in a light most favorable to the plaintiff).").

The court has already found that Plaintiff has submitted sufficient

evidence to demonstrate violations of her rights to equal protection and substantive

due process at this stage of the litigation.  The remaining question is whether the

rights asserted by Plaintiff were well-established such that a reasonable officer of the

state would have known they were violating Plaintiff's rights.   Defendants miss the

mark by arguing that the Court of Common Pleas' finding that the terms of the condemnation order were reasonable demonstrates that the actions of the Defendants were reasonable.  The pertinent question is not the reasonableness of the terms of the order itself, but rather the likelihood that a reasonable officer of the state would be aware that he or she is violating Plaintiff's rights.  Plaintiff claims that Defendants' actions violated her right of possession, ownership and use and enjoyment of property, interests that are protected by substantive due process.  The Third Circuit has long since recognized that these interests are protected by due process.  *See, e.g., Wrench* , 340 F. App'x at 816.  Thus, a reasonable law enforcement officer who interferes with this right on the basis of racial discrimination should know that his or her conduct "shocks the conscience."  Likewise, it is well-established that "preferring members of any one group for no reason other than race . . . is discrimination for its own sake" and is forbidden by the Fourteenth Amendment and there is a clearly established right to equal protection.  *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 307 (1978); *Mitchum v. Foster*, 407 U.S. 225, 238 (1972).   The contours of the Fourteenth Amendment were sufficiently clear at the time Defendants' alleged acts took place such that a reasonable official would have known, or should have known, that discriminating against someone who is African-American in the context of condemnation proceedings violated these rights. There is still some uncertainty regarding facts that may establish Defendants' motives in their handling of Plaintiffs' condemnation proceedings.  Accordingly, Defendants' motion will be denied on the basis of qualified immunity.[14]

---

[14]   As to Plaintiff's Fifth Amendment government deprivation and Fourth Amendment unreasonable seizure claims, because the court finds that no constitutional right has been violated, the

(continued...)

**IV.**          **Conclusion**

Based on the foregoing, the court will grant in part and deny in part Defendants' motion for summary judgment.  The motion will be granted in full as to Defendant Bureau of Codes because Plaintiff failed to adduced evidence or even allege that the Bureau or City of Harrisburg itself has purposefully violated Plaintiff's constitutional rights pursuant to some established policy or custom.  The court will also grant the motion with regard to Plaintiff's Fourth Amendment unreasonable seizure and Fifth Amendment government deprivation claims because Plaintiff sold her property and therefore did not suffer a deprivation or seizure sufficient to state a Constitutional violation.  The court will deny the motion with regard Plaintiff's equal protection and substantive due process claims because Plaintiff has sufficiently demonstrated that genuine issues of material fact remain and, resolving those facts in favor of Plaintiff, a reasonable jury could find a violation of Plaintiff's rights to equal protection and substantive due process.

---

[14](...continued)
court need not reach the issue of whether the individual defendants met their burden to establish qualified immunity.  *See Gannaway v. Karetas,* 438 F. App'x 61, 67 (3d Cir. 2011) ("As there was no constitutional violation, we need not engage in an analysis of qualified immunity.").  Regarding the remainder of Plaintiff's claims, because Defendants did not move for summary judgment on those claims with specificity, the court is unable to decide this issue with regard to those claims.

An appropriate order will be issued.

s/Sylvia H. Rambo
United States District Judge

Dated:  February 24, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DELAINE ANDREWS,    :  Civil No. 1:08-CV-1669
          :
     **Plaintiff**   :  **JUDGE SYLVIA H. RAMBO**
          :
   **v.**       :
          :
**BUREAU OF CODES**    :
**ADMINISTRATIVE OFFICE,** *et al.*, :
          :
    **Defendants**  :

**O R D E R**

In accordance with the accompanying memorandum, it is **HEREBY
ORDERED** that:

(1)  Defendants' motion for summary judgment (Doc. 115) is
**GRANTED** in part and **DENIED** in part as follows:

  (A) The motion is **GRANTED** in all respects as to Defendant
Bureau of Codes;

  (B) The motion is **GRANTED** in all respects as to Defendant
David Patton;

  (C) The motion is **GRANTED** as to Plaintiff's Fourth
Amendment unreasonable seizure and Fifth Amendment government
deprivation claims;

  (D) The motion is **DENIED** as to Plaintiffs' Fourth Amendment
Equal Protection and Fourteenth Amendment Substantive Due Process
claims.

(2) Pursuant to footnote four in the accompanying memorandum, Plaintiff's Fourteenth Amendment Procedural Due Process claim is **DISMISSED**.

(3) The clerk of court shall defer the entry of judgment until after trial in this matter.

(4) The court will issue a separate order setting forth the remaining case management deadlines for the balance of the case, including a trial date .

                    s/Sylvia H. Rambo
                    United States District Judge

Dated:  February 24, 2012.

2